UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Estate of MICHAEL SAMUELSON, by STEPHANIE SAMUELSON, Personal Representative, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:13-cv-440 ) |
| ARCELORMITTAL USA, LLC, | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Strike Count II of Plaintiff's Complaint [DE 125] filed by the defendant, ArcelorMittal USA, LLC, on March 14, 2018. For the following reasons, the motion is **GRANTED.**

*Background*

The plaintiff, Estate of Michael Samuelson, by Stephanie Samuelson, Personal Representative, initiated this matter on November 15, 2013, in Lake County Superior Court. The matter was removed to this court on November 29, 2013. The plaintiff has alleged that on November 13, 2013, Michael Samuelson was killed while working at the ArcelorMittal steel mill when he was struck by a falling steel panel. At the time of the accident, Samuelson was working for Pangere Corporation, an independent contractor.

ArcelorMittal held a bid meeting for the "demolition of the Wall Plates on the Basic Oxygen Furnace #2 in the Rubble Pit" (demolition project). The project was to replace the protective steel plates that lined the concrete walls in the rubble pit. Pangere had the lowest bid price and was assigned the work for the demolition project. The second amended complaint has

alleged that "the demolition project was not a construction project, or a new construction project, but specifically demolition and replacement of the existing steel walls of the slag pit." Scott Fritz, a Pangere superintendent, and other Pangere employees had performed the same job safely for ArcelorMittal ten times in the past.

On September 20, 2017, ArcelorMittal filed a Motion for Summary Judgment [DE 91]. On March 8, 2018, the district court granted the motion in all respects except for the question of whether ArcelorMittal had a non-delegable duty to Samuelson because Pangere contracted for work that was intrinsically dangerous.[1] The court found that the removal of the steel plates potentially was intrinsically dangerous work and that this issue was best left for the jury. However, on the other hand, the plaintiff had failed to establish that the removal of the plates was demolition work.

The court held a telephonic status conference with the parties on March 8, 2018. The parties advised the court that they consented to have Magistrate Judge Andrew P. Rodovich preside over the trial of this case. This matter, upon full consent of the parties, was reassigned for all purposes to Magistrate Judge Andrew P. Rodovich pursuant to 28 U.S.C. Section 636(c) on March 9, 2018. The court set this matter for trial to begin on August 20, 2018.

ArcelorMittal has filed the motion to strike requesting that the court strike Count II of the plaintiff's second amended. Count II of the complaint has alleged that ArcelorMittal's contract with Pangere required the performance of intrinsically dangerous work. It further has alleged that demolition work is intrinsically dangerous work. ArcelorMittal contends that the plaintiff cannot proceed on Count II because the court has found that the work was not demolition. The

---

[1] District Court Judge Joseph Van Bokkelen ruled on the Motion for Summary Judgment [DE 91] on March 8, 2018. This matter was reassigned for all purposes pursuant to 28 U.S.C. Section 636(c) on March 9, 2018, to Magistrate Judge Andrew P. Rodovich.

plaintiff filed a response in opposition on April 18, 2018, and ArcelorMittal filed a reply on April 24, 2018. A hearing was held on May 22, 2018. The court indicated at the hearing that a ruling would be issued by separate order.

*Discussion*

**Federal Rule of Civil Procedure 12(f)** states that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike generally are disfavored, although they may be granted if they remove unnecessary clutter from a case and expedite matters, rather than delay them. ***Heller Fin., Inc. v. Midwhey Powder Co., Inc.***, 883 F.2d 1286, 1294 (7th Cir. 1989); ***Doe v. Brimfield Grade School***, 552 F. Supp. 2d 816, 825 (C.D. Ill. 2008). The decision whether to strike a pleading is within the discretion of the court. ***Talbot v. Robert Matthews Distrib. Co.***, 961 F.2d 654, 665 (7th Cir. 1992).

In response to ArcelorMittal's motion for summary judgment, the plaintiff maintained that ArcelorMittal was liable because it had a non-delegable duty to protect Samuelson who was involved in intrinsically dangerous work. The plaintiff presented additional arguments including: ArcelorMittal retained control over the means and methods of Pangere's work and thus subjected itself to liability for Samuelson's death; the contractual documents between ArcelorMittal and Pangere imposed responsibility on ArcelorMittal for the safety of Pangere's workers; and ArcelorMittal failed to provide reasonably safe premises for Samuelson.

The court held that the contract between ArcelorMittal and Pangere did not make ArcelorMittal responsible for Samuelson's safety. Additionally, pursuant to §343 of the Restatement of Torts, ArcelorMittal was not liable as the owner of the premises where the accident occurred. Finally, the plaintiff had failed to establish that the work performed was demolition. In light of these findings, the court granted the motion for summary judgment in all

respects except for the question of whether ArcelorMittal had a non-delegable duty to Samuelson because Pangere contracted for work that was intrinsically dangerous. The court determined that there was sufficient evidence to create a genuine dispute of material of fact on whether the removal of the steel plates was intrinsically dangerous work. Therefore, as discussed and agreed to by the parties at the hearing held on May 22, 2018, counts I, III, IV, V, and VI of the second amended complaint did not survive Judge Van Bokkelen's Order, and therefore were dismissed. The only count that remained was Count II.

The "law of the case" doctrine is a long-standing legal doctrine. It provides that courts should not reopen issues that were decided in earlier stages of the same litigation. ***McMasters v. U.S.,*** 260 F.3d 814, 818 (7th Cir. 2001) (citing ***Christianson v. Colt Indus. Operating Corp.,*** 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). The practical implications of the doctrine are to promote the finality and efficiency of the judicial process. *See* ***Christianson,*** 486 U.S. at 816, 108 S.Ct. 2166 (citing **1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice** ¶ 0.404[1], p. 118 (1984)). Therefore, when an issue is once litigated and decided, that should be the end of the matter. ***Analytical Engineering, Inc. v. Baldwin Filters, Inc***., 425 F.3d 443, 454 (7th Cir. 2005).

ArcelorMittal has argued that the plaintiff cannot proceed on Count II. It contends that the court's March 8, 2018 ruling that the work was not demolition has precluded the plaintiff's ability to recover under Count II. Therefore, the issue presented before this court is whether Count II of the plaintiff's second amended complaint should be stricken in light of the court's finding on summary judgment that the work performed was not demolition. ArcelorMittal is not attempting to re-litigate an issue that already has been decided. Therefore, the law of the case does not preclude the relief requested.

It is a "well-settled rule that a party is bound by what it states in its pleadings." *Help At Home Inc. v. Medical Capital, L.L.C.,* 260 F.3d 748, 753 (7th Cir. 2001); *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995).

The Statement of Facts in the second amended complaint describes the work assigned to Pangere as demolition. Specifically, paragraph 7 of the Statement of Facts alleges, "The demolition project was not a construction project, or a new construction project, but specifically demolition and replacement of the existing steel walls of the slag pit." Also, in paragraph 16 the plaintiff provides the definition of demolition as defined by the Occupational Safety and Health Administration (OSHA), 29 C.F.R. Part 1926, subpart T. Moreover, paragraphs 17 through 22 allege the hazards, specific requirements, and fatalities that are associated with demolition work. The allegations contained in the Statement of Facts are centered on the plaintiff's contention that the project performed was demolition.

Count II alleges that ArcelorMittal's contract with Pangere required the "performance of intrinsically dangerous work" and that "demolition work is intrinsically dangerous work." Furthermore, in Count II the plaintiff alleges that notwithstanding its duty, ArcelorMittal, by and through its agents, servants, and employees was then and there guilty of one or more of the following careless and negligent act and/or omissions:

a. Failed to complete the required engineering survey, prior to the start of any demolition work;

b. Failed to adhere to their own Handbook's heightened requirements for demolition projects performed at their facilities, due to hazards inherent in demolition operations;

c. Failed to complete the required engineered lift plan for all major lifts, which at a minimum shall include crane capacity, cable size and attachment details;

d. Failed to require Pangere to employ a dedicated safety person who must conduct continuous inspections to detect hazards from the inherently weakened structures;

e. Failed to comply with the contractual requirement that Pangere must contact ArcelorMittal USA, LLC supervision from the hot work area to insure that no abnormal or changed conditions exist;

f. Failed to enforce the contractual provision that required Pangere to obtain the approval of the ArcelorMittal USA, LLC engineering group before burning holes into or welding onto any structural or building member; and

g. Failed received the required Hot Work Approval Form prior to grinding, burning, welding or any open flame cutting.

ArcelorMittal operates under its Contractor Safety, Health and Environment Handbook, which includes policies, procedures, and general terms and conditions. The subparagraphs a through g address demolition and the contractual requirements between ArcelorMittal and Pangere. There is no dispute that subparagraphs 5a and 5b refer to demolition and 5c and 5d are pulled directly from ArcelorMittal's handbook. Although 5c and 5d do not explicitly state the word demolition, the complaint has alleged that "Page 11, Section 7A.0 of the Handbook outlines Mittal's requirements for demolition projects performed at their facilities, which includes a requirement in Section 7A.4 of an engineered lift plan for all major lifts: the engineered lift plans shall include at a minimum crane capacity, cable size, and attachment details." Moreover, 5d also was pulled directly from Section 7A.0 of the Handbook, 7A.8, titled Demolition. Therefore, in Count II paragraph 5 the plaintiff has used language that comes directly from ArcelorMittal's handbook under Section 7A.0, Demolition.

Additionally, the court finds that 5e through 5g refer to the contractual requirements between ArcelorMittal and Pangere. The court in its Order on summary judgment indicated that the plaintiff had overlooked provisions in the contract that mandated that the contractors control

6

access to the job site, be responsible for all persons and work at the job site, and protect all persons and property from injury, damage, or loss. The court held that the contract did not make ArcelorMittal responsible for Samuelson's safety. This holding eliminates subparagraphs 5e through 5g.

A principal is not liable for the negligence of an independent contractor whom it employed, unless one of the five exceptions applies: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will likely cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. ***Bagley v. Insight Commc'ns Co., L.P.***, 658 N.E.2d 584, 586 (Ind. 1995). The plaintiff has alleged in Count II that ArcelorMittal contracted with Pangere to perform intrinsically dangerous work. However, the plaintiff is bound by the allegations she made in the second amended complaint. It is clear that Count II directly addresses that demolition work is intrinsically dangerous work. Yet, the court has ruled that the work performed was not demolition. The complaint is devoid of any other factual allegations that the work was intrinsically dangerous. Thus, the plaintiff has not presented any allegations that even if taken as true would entitle the plaintiff to relief. The court hereby **STRIKES** Count II of the plaintiff's second amended complaint.

In the response in opposition to the motion to strike, the plaintiff has requested that if the court was to grant the motion to strike, in the alternative, the plaintiff be granted leave to amend the second amended complaint. First, the plaintiff has failed to file a separate motion to amend the complaint. A motion to amend a complaint must be filed separately, rather than incorporated into a response. *See* **N.D. Ind. L.R. 7-1** (provides that motions must be filed separately). Also,

motions to amend a pleading must include the original signed proposed amendment as an attachment.  **N.D. Ind. L.R. 15-1.**  Despite the fact that the plaintiff's request to amend procedurally is improper the court will decide this issue on the merits.

**Federal Rule of Civil Procedure 15(a)** provides that a party may amend the party's pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires.  Because pleadings merely serve to put the opposing side on notice, they should be freely amended as the case develops, as long as amendments do not unfairly surprise or prejudice the opposing party.  **Rule 15(a);** *Jackson v. Rockford Housing Authority*, 213 F.3d 389, 390 (7th Cir. 2000).  The decision to deny leave to amend a pleading is an abuse of discretion only if no reasonable person could agree with the decision.  *Winters v. Fru–Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (quoting *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)); *Ajayi v. Aramark Business Services*, 336 F.3d 520, 530 (7th Cir. 2003).

Leave to amend may be denied at the district court's discretion for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.  *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

The court finds that the plaintiff's request to amend is untimely.  This matter is set for trial on August 20, 2018.  It would be unduly prejudicial to allow an amendment this close to the scheduled trial date.  The plaintiff, from the beginning, has alleged that the work performed by Pangere was demolition and that demolition work is intrinsically dangerous.  Therefore, by granting the plaintiff leave to amend the complaint, the plaintiff would be presenting a new

factual basis that was not previously presented in the pleadings. It would prejudice ArcelorMittal to have to re-litigate this matter on a new basis. The denial of a motion to amend pleadings is proper if the discovery and dispositive deadlines have passed and the motion is filed near the trial date. For example, in *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005), the Seventh Circuit denied the plaintiffs' motion for leave to amend when the "plaintiffs' motion came approximately three years after the start of the litigation and approximately eight months after the plaintiff completed discovery." Consistently, the Seventh Circuit has affirmed denials of a motion for leave to amend where a plaintiff has sought leave to amend after the defendant filed a successful motion for summary judgment. *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 774 (7th Cir. 1995); *see also* **Cleveland v. Porca Co.,** 38 F.3d 289, 297 (7th Cir. 1994) (district court did not abuse its discretion in denying motion to amend "after discovery was completed and after motions for summary judgment were fully briefed . . . This motion came late in the day.").

Also, the court finds that allowing the plaintiff to amend her complaint would be futile. The court may deny leave because the amendment is futile. *Bethany Pharmacal Company, Inc. v. QVC, Inc*., 241 F.3d 854, 861 (7th Cir. 2001). It would be improper for the court to deny leave to amend if the proposed amendment is not clearly futile. *See* **Wright & Miller, 6 Federal Practice & Procedure § 1487**, at 637-642 (2d ed. 1990) ("If the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."). Futility generally is measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bethany Pharmacal Company, Inc.,* 241 F.3d at 861; *Range v. Brubaker,* 2009 WL 3257627, at *3 (N.D. Ind. 2009).

As a long-standing general rule, a principal is not liable for the negligence of an independent contractor whom it employs. *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). However, Indiana recognizes the non-delegable duty doctrine. Indiana has recognized five exceptions to the general rule of non-liability, including where the contract requires the performance of intrinsically dangerous work. *Bagley,* 658 N.E.2d at 586 (Ind. 1995); *PSI Energy, Inc. v. Roberts,* 829 N.E.2d 943, 950 (Ind. 2005), *abrogated in part by Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345 (Ind. 2006). The Indiana Supreme Court in the *Roberts* opinion held that:

> Employees of the contractor should have no claim against a principal for their own or the contractor's failure to use ordinary care in carrying out the contractor's assignment. Nor should a principal be liable to a contractor or its employees simply by reason of employing the contractor to engage in inherently dangerous activity. We hold therefore that in the absence of negligent selection of the contractor, an employee of the contractor has no claim against the principal based solely on the five exceptions to the general rule of non-liability for acts of the contractor.

*Roberts*, 829 N.E.2d at 953 (emphasis added).

Therefore, in order to proceed on the amended complaint the plaintiff first must prove that ArcelorMittal negligently hired Pangere. A principal owes no duty of care to an employee of an independent contractor if there is no allegation the principal negligently selected its independent contractor. *Roberts,* 829 N.E.2d at 953, 957; *see also Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.,* 854 N.E.2d 345, 346 (Ind. 2006) (limiting the *Roberts* holding to only the first and fourth exceptions to the general rule of non-liability). To prove negligent hiring under Indiana law, a plaintiff must show, like any negligence claim, a duty, a breach of that duty, and an injury proximately caused by the breach of that duty. *Clark v. Artis, Inc.*, 890 N.E.2d 760, 763 (Ind. Ct. App. 2008). An essential component to proving negligent hiring is whether it was reasonably foreseeable that Pangere would not perform its work safely. *Clark,*

890 N.E.2d at 764. Indiana law is clear that "negligence cannot be inferred from the mere fact of an accident." *Wright Corp. v. Quack*, 526 N.E.2d 216, 218 (Ind. Ct. App. 1988). The Seventh Circuit has found no negligent hiring when a contractor had a good reputation, and the principal had no duty to quiz him concerning the details of his experience. *Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005, 1010 (7th Cir. 1982).

The court should allow a plaintiff to amend the complaint if the plaintiff can put forth some allegations that allow the proposed amendment to survive a motion to dismiss, even if portions of the complaint are futile. *Estate of Simpson v. Bartholomew County Jail*, 2014 WL 5817319, at *3 (S.D. Ind. 2014). ArcelorMittal has indicated that Pangere had performed this job approximately ten times in the past without any issues. (Deposition of Scott Fritz, p. 55). Moreover, ArcelorMittal checked Pangere's accident history through a system called ISNetworld, which provide information on the contractor's incident rates, lost time rates, fatality rates, and incident severity. Pangere had received a passing grade. (Deposition of Sam Bird, pp. 56-57.)

There is no evidence in the record to support any factual allegations that Pangere negligently was hired. Also, the plaintiff has not disclosed any witness who will offer lay or expert testimony on the negligent hiring issue. Therefore, the allegations contained in the amended complaint would be conclusory, speculative, and lack factual support. Thus, an amendment would not cure the deficiencies. Moreover, if the plaintiff was to amend the complaint, the court would be allowing her to circumvent the effects of the Order on the motion for summary judgment. The court finds that the plaintiff's request to amend this late in the proceedings is untimely and would be futile, resulting in prejudice to ArcelorMittal.

Based on the foregoing reasons, the Motion to Strike Count II of Plaintiff's Complaint [DE 125] is **GRANTED.** This matter is **DISMISSED WITH PREJUDICE.**

ENTERED this 15th day of June, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge